IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT M. BOUGHTON,

    Plaintiff,

v.                                                      Case No. 1:20-cv-00542-KWR-SCY

U.S. BANK NATIONAL ASSOCATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment, filed January 11, 2021 **(Doc. 23)**. Having reviewed the pleadings and applicable law, the Court finds that Defendant's Motion is well taken and, therefore, is **GRANTED.** A separate judgment in favor of Defendant will be entered.

## BACKGROUND

Plaintiff challenges certain overdraft fees assessed by Defendant. Plaintiff has a checking account with Defendant U.S Bank, N.A., and he asserts that his account is funded by his Social Security Disability Income. He argues that such funds are exempt from creditors under the Social Security Act, 42 U.S.C. §§ 301-1397. Plaintiff's complaint appears to assert one claim – that the overdraft fees violated the anti-assignment provision of the Social Security Act under 42 U.S.C. § 407(a). **Doc. 1.** Plaintiff requested reimbursement of $380.85 in overdraft fees, as well as $2,000 in punitive damages.

Defendant moved for summary judgment on January 11, 2021. **Doc. 23.** Pursuant to the local rules, Plaintiff had fourteen days to file a response. D.N.M.LR-Civ 7.4(a). Because Plaintiff

failed to file a response at all, the Court deems all of Defendant's material facts as undisputed. D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted."); *see also* D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."); *see also Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) ("By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion.").

Plaintiff signed up for electronic service, *see* **Doc. 6,** and the summary judgment motion was emailed to him. **Doc. 23 (Notice of Electronic Filing).** The Court system's notice of electronic filing confirms that the summary judgment motion was emailed to him. Moreover, Judge Yarbrough informed Plaintiff that a *Guide for Pro Se Litigants* would be mailed to him. According to a staff note on the docket, the Court mailed Plaintiff a *Guide for Pro Se Litigants* and the local rules to Plaintiff on October 22, 2020. *See* https://www.nmd.uscourts.gov/representing-yourself-pro-se (last accessed March 30, 2021). The *Guide* provides "[i]t is a *pro se* litigant's responsibility to become familiar with and to comply with the *Federal Rules of Civil Procedure* and the *Local Rules of the United States District Court for the District of New Mexico* (the "Local Rules")." *Guide* at 4.

The Court therefore considers this motion fully briefed and ready for ruling.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co*., 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

**UNDISPUTED FACTS**

Plaintiff voluntarily opened an account with U.S. Bank on or about November 1, 2019. In opening and using the bank account Plaintiff agreed to U.S. Bank's terms, including their Deposit Account Agreement. Under a section entitled "Our Fees," the Agreement provides:

> We charge an Overdraft Returned Fee for each withdrawal (e.g. in-person, ATM, automatic payment, or other paper or electronic withdrawal transaction) we return because it exceeds your Available Balance on a given day. We charge an Overdraft Paid Fee for each item or transaction we pay that causes the Available Balance to become negative or occurs while the Available Balance is negative on the checking account. We may charge you an Extended Overdraft Fee if your Available Balance remains negative for an extended period of time. See the current pricing information brochure for information on fees and how fees will be assessed. Any Overdraft Returned or Overdraft Paid fees are deducted from your account on the next business day; additionally, the Extended Overdraft Fee assessed after seven consecutive calendar days with a negative balance is deducted from your account on the next business day. If you want to avoid the inconvenience and extra expense of overdraft fees, refer to the section titled "Overdraft Protection Plans" on page 7 for information.

**UMF 3, Ex. 1. at 6**. Under a section entitled "Set off", the Agreement provides:

> We [U.S. Bank] have the right under the law to set off amounts you owe us against your accounts with us…In addition to this legal right, you give us and our affiliates

3

the contractual right to apply without demand or prior notice, all or part of the property (including money, certificates of deposit, securities and other investment property, financial assets, etc.) in your accounts, against any debt any one or more of you owe us or our affiliates…We will not be liable to you if enforcing our rights of setoff against your account(s) leaves insufficient funds to cover outstanding items or other obligations.

**UMF 4, Ex. 1 at 16.**

On at least 18 occasions, Plaintiff initiated transactions for which the Account had insufficient funds. As a result of the insufficient funds U.S bank charged the Plaintiff "non-sufficient funds" or "overdraft fees, which were set off against this account, on the basis of the Agreement. Plaintiff has been free at all times to close the account.

## DISCUSSION

Plaintiff asserts that the overdraft fees assessed by Defendant are barred by the Social Security Act. Defendant argues that summary judgment should be entered in its favor because the Social Security Act does not bar the assessment of overdraft fees in this case.[1] The Court agrees with Defendant. The Social Security Act provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and *none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process*, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (emphasis added). This subsection also applies to SSDI payments. 42 U.S.C. 1383(d)(1).

At issue is whether the assessment of overdraft fees to Plaintiff's checking account pursuant to a voluntary contract is an "other legal process" in the nature of an "execution, levy, attachment, [or] garnishment." The Court concludes it is not.

---

[1] The Court reads the complaint like Defendant and believes that Plaintiff is asserting one claim based on the Social Security Act's anti-attachment provision, 42 U.S.C. 407(a). Plaintiff has not responded to the motion to explain that he in fact asserts other claims.

4

The United States Supreme Court has defined "other legal process" under section 407(a) very narrowly:

> The statute, however, uses the term "other legal process" far more restrictively, for under the established interpretative canons of *noscitur a sociis* and *ejusdem generis,* where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. Thus, "other legal process" should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 384–85, 123 S. Ct. 1017, 1025, 154 L. Ed. 2d 972 (2003) (internal citations and quotation marks omitted). In *Keffeler*, the United States Supreme Court concluded that a state health department's effort to become a representative payee and use respondent's social security benefits to pay foster care costs did not employ judicial or quasi judicial procedures. *Id.*

The *Keffeler* court also emphasized that legal processes "typically involve the exercise of some judicial or quasi-judicial authority to gain control of another's property." *Id.* at 386. A quasi-judicial process is one that is similar to a judicial or adjudicative process. *In re Ward*, 464 B.R. 471, 476 (Bankr. N.D. Ga. 2011), *citing Wilson v. Harris N.A.,* No. 06 C 5840, 2007 WL 2608521, at *11 (N.D. Ill. Sept. 4, 2007), *and Sanford v. Standard Fed. Bank*, No. 10-12052, 2011 WL 721314, at *7 (E.D. Mich. Feb. 23, 2011).

The Court does not believe that overdraft fees applied to a checking account pursuant to a voluntary contract with bank is a "judicial or quasi-judicial mechanism" similar to execution, levy, attachment, and garnishment. Here, no judicial or quasi-judicial mechanism was used to obtain control over Plaintiff's benefits. It is undisputed here that the fees were assessed pursuant to a voluntary contract, and Plaintiff could have ended the relationship with U.S. Bank at any time.

5

**UMF 2, 7.** Plaintiff has not shown how the assessment of these fees is similar to a judicial process. The Court accepts the undisputed fact that Plaintiff voluntarily entered into the contract and does not *sua sponte* analyze adhesion contract law.

Since *Keffeler*, courts have repeatedly concluded that the assessment of fees to a checking account such as in this case is not an "other legal process" barred by section 407(a). *Fortelney v. Liberty Life Assur. Co. of Bos.*, 790 F. Supp. 2d 1322, 1346–47 (W.D. Okla. 2011) ("In light of the Supreme Court's ruling, this court cannot conclude that IBI's withdrawal of funds from plaintiff Carter's account pursuant to the Social Security Electronic Repayment Authorization agreement constitutes "other legal process" under § 407(a). There was no judicial or quasi-judicial mechanism utilized to obtain control over Carter's social security benefits."); *Wilson v. Harris N.A.*, No. 06 C 5840, 2007 WL 2608521, at *9 (N.D. Ill. Sept. 4, 2007) (no violation of section 407 by bank collecting overdraft fees); *Sanford v. Standard Fed. Bank*, No. 10-12052, 2011 WL 721314, at *7 (E.D. Mich. Feb. 23, 2011) (use of SSI funds to offset an overdraft "does not constitute the use of a judicial or quasi-judicial mechanism. BOA's alleged setoff does not appear to involve any legal process. There is no indication that the imposition of an overdraft fee is an adjudicative process, and absent such a showing, the Court cannot conclude that BOA's alleged setoff implicates 42 U.S.C. § 407(a)."); *Miller v. Bank of America,* 46 Cal.4th 630, 94 Cal.Rptr.3d 31, 207 P.3d 531, 540 (Cal.2009) (quoting letter from the Office of the Comptroller of the Currency and providing that national banks may "establish, charge and recover overdraft fees from depositors' accounts" without running afoul of laws that protect social security benefits); *Walton v. U.S. Bank*, No. 2:09-CV-931, 2010 WL 3928507, at *4 (D. Utah Oct. 4, 2010) (fees did not violate 407); *See also Lopez v. Washington Mut. Bank, FA*, 302 F.3d 900, 904 (9th Cir.), *opinion amended on denial of reh'g sub nom. Lopez v. Washington Mut. Bank, F.A.*, 311 F.3d 928 (9th Cir. 2002) ("In this case, the

6

plaintiffs voluntarily opened an account with the bank and executed an account holder agreement which outlined the terms and conditions of the bank's overdraft policies. They also established a direct deposit for their benefits (an agreement to which Washington Mutual was not a party). The plaintiffs remained free at all times to close their account or change their direct deposit instructions. Because they did not do so, Washington Mutual argues, each deposit to the account after an overdraft should be treated as a voluntary payment of a debt incurred. We agree."); *see also Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 969 (7th Cir. 2012) (termination fee by Dish network pursuant to voluntary contract did not violate section 407(a)).

Although Plaintiff did not respond to the motion, the Court notes that Plaintiff cited to *Tom v. First Am. Credit Union*, 151 F.3d 1289, 1293 (10th Cir. 1998) in his complaint, and the Defendant addressed *Tom v. First American* in its motion. **Doc. 1 at 4; Doc. 23 at 7.** Plaintiff asserts that *Tom v. First American* prohibits "seizing the contents of an account opened by a beneficiary of federal funds" pursuant to the "other legal process" provision of section 407(a). **Doc. 1 at 4.**

Initially, the Court notes that *Tom v. First American* is not factually on point and therefore distinguishable. *Tom* did not involve the assessment of overdraft fees to a checking account pursuant to a voluntary contractual agreement. Rather, in that case defendant-bank set off a *separate* loan against the plaintiff's checking account containing social security benefits.

The Ninth Circuit dealt with an overdraft fee case similar to this one, and distinguished *Tom* on the facts. The Ninth Circuit reasoned that "[t]he factual situation in *Tom,* however, is also distinguishable, because First American used the Social Security deposits to satisfy a separate, pre-existing debt unrelated to the operation of the depositor's checking account. The act of depositing the funds into the checking account was thus not an indication of an intent to pay the separate debt.

7

Had the depositor consensually arranged an automatic payment of the loan from the account containing the Social Security funds, we suspect the result would have been different." *Lopez v. Washington Mut. Bank, FA*, 302 F.3d 900, 906 (9th Cir.), *opinion amended on denial of reh'g sub nom. Lopez v. Washington Mut. Bank, F.A.,* 311 F.3d 928 (9th Cir. 2002).  Therefore, the Court concludes that *Tom* is not controlling based on the facts of this case.

Alternatively, *Tom* is no longer controlling in light of the subsequent United States Supreme Court case *Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 385, 123 S. Ct. 1017, 1025, 154 L. Ed. 2d 972 (2003).  *Tom v. First American* had a very broad reading of the "other legal process" language in section 407(a). It reasoned that "[w]hen Congress enacted § 407, it intended to exempt Social Security funds from all creditors, regardless of whether they attempted to reach those funds by way of the court system or by way of self-help remedies. We thus hold that setoff constitutes "other legal process" under § 407 and that the Credit Union violated this section when it seized Mrs. Tom's Social Security payments." *Tom v. First Am. Credit Union*, 151 F.3d 1289, 1293 (10th Cir. 1998).  This reasoning appears to conflict with the very narrow reading of "other legal process" in the subsequent *Keffeler* case, which limited "other legal processes" to judicial or quasi-judicial proceedings similar to attachment, levy, execution, and garnishment. *Keffeler,* 537 U.S. at 384, 123 S.Ct. 1017.  Other cases agree with the Court's assessment of this conflict.  *See Fortelney v. Liberty Life Assurance Co. of Boston,* 790 F.Supp.2d 1322, 1346 (W.D.Okla. 2011) (following Keffeler and acknowledging conflict between *Keffeler* and *Tom*); *Lakewood Credit Union v. Goodrich*, 2016 WI App 77, ¶ 25, 372 Wis. 2d 84, 102–03, 887 N.W.2d 342, 350–51 (discussing whether *Tom* is still good law in light of *Keffeler*); *Ward,* 464 B.R. at 475 (questioning precedential status of authorities predating *Keffeler*); *see also Wojchowski v. Daines,* 498 F.3d 99, 108–09 (2d Cir. 2007)

8

(acknowledging that the Second Circuit's previous "expansive" interpretation of the phrase "other legal process" in *Robbins ex rel. Robbins v. DeBuono,* 218 F.3d 197 (2d Cir.2000), was incompatible with the restrictive reading of that phrase in *Keffeler*). Therefore, *Tom v. First American* does not apply here.

## CONCLUSION

For the reasons stated above, the anti-assignment provision of the Social Security Act, 42 U.S.C. § 407(a), did not bar the Defendant from assessing overdraft fees in Plaintiff's checking account. Therefore, the Court grants summary judgment in Defendant's favor.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 23**) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

A separate judgment will be entered.

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**